UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 22-11320-JGR |
| CLEARWATER COLLECTION 15, LLC ) | |
| EIN: 47-4082355 ) | Chapter 11 |
| ) | |
|    Debtor. ) | |
| _____ ) | |
| IN RE: ) | |
| ) | Case No. 22-11321-JGR |
| CLEARWATER PLAINFIELD 15, LLC ) | Chapter 11 |
| EIN: 47-4097826 ) | |
| ) | |
|    Debtor. ) | |

**DECLARATION OF GARY DRAGUL IN
SUPPORT OF FIRST DAY MOTION**

I, Gary Dragul, President, Clearwater Collection 15, LLC and Clearwater Plainfield 15, LLC, by GDA Clearwater Management, LLC and GDA Real Estate Management, Inc., Manager, hereby states under penalty of perjury:

*The Debtors*

1. I am the President of the managing member of the Debtor.

2. The Debtors each filed a Voluntary Petition pursuant to Sub-Chapter V of Chapter 11 of the Bankruptcy Code on April 19, 2022 (the "Petition Date").

3. The Debtors continue in possession of their property and is operating and managing their business, as debtors-in-possession, pursuant to Bankruptcy Code §§ 1107 and 1108.

4. The Debtors are each a Colorado limited liability company. Clearwater Collection 15, LLC is an 82.52% owner of a shopping center located at 21688 Highway 19 N, Clearwater, FL 33765 (the "Shopping Center"). Clearwater Plainfield 15, LLC is the other owner.

5. A receiver has been appointed over the Shopping Center. The secured creditor encumbering the Shopping Center is proceeding with a foreclosure action. The report of the receiver shows the Shopping Center is running at a negative balance. In addition, currently the value of the Shopping Center is approximately equal to the debt. There are a number of empty pads at the Shopping Center. With proper management, the Shopping Center will cash flow and have equity. The secured creditor can be paid in full, and there will be a return for investors provided the

Shopping Center is allowed to continue to operate or there is an orderly liquidation of the Shopping Center.

*Cash Collateral*

6. The Debtors maintain a secured loan whose lien arising therefrom could encumber the Debtors' "cash collateral" as the term is defined in Bankruptcy Code § 363. The lien is generally described as follows:

> a. RSS WFCM 2015-LC22-FL CC15, LLC, successor to Rialto Capital (the "Bank"), pursuant to pursuant to a certain loan agreement dated on or around August 12, 2015. On September 29, 2020, the Bank filed its UCC-1 asserting a lien on substantially all assets of the Debtor.

7. The Bank asserts it is owed approximately $17,500,000. The Debtors dispute this amount.

8. Based on the foregoing, the Bank may have a secured lien position on the Debtors' funds and revenues that constitute cash collateral as the term is defined in the Bankruptcy Code.

9. The Debtors' total asset value as of the Petition Date is approximately $18,000,000. The Shopping Center has a value of approximately $18,000,000. Pursuant to the receiver's most recently filed report, filed February 25, 2022 there is $3,389.65 in cash and $107,586.51 in receivables. The Debtors receive cash from the lease of space at the Shopping Center. Pursuant to the receiver report, base rent of approximately $60,000 per month is being received and another approximate $20,000 in common area rent is being received. There are several spaces that have been allowed to remain vacant, which if filled will increase the rent received at the Shopping Center. In addition the value of the Shopping Center could increase to approximately $20,000,000.

10. The Debtors are therefore replacing cash in the ordinary course of its operations. The Debtors' assets are not the type that generally depreciate in value. In order to pay necessary operating expenses of the Shopping Center, the Debtors must immediately use cash collateral in which the Bank may have an interest.

11. Accordingly, the secured interest of the Bank in the Debtors' assets is adequately protected against the Debtors' ongoing use of cash and the value of the Shopping Center.

12. In order to pay necessary operating expenses, the Debtors must immediately use cash collateral in which Secured Creditors may have an interest.

*Motion to Compel Trustee to Comply with Bankruptcy Code § 543*

13. The receiver has been appointed over the Shopping Center has been in place for approximately 2 years.

14. Bankruptcy Code § 543(b) requires the receiver to immediately turnover to the Debtors all property of the estate in the receiver's possession and provide an accounting.

15. The immediate turnover by the receiver is essential. The Debtors need cash and receivables to operate and the books and records to, among other things, complete the schedules and statement of financial affairs, open a Debtor in Possession bank account, assess insurance requirements, begin leasing of vacant space, and to determine what if any motions are necessary in the immediate.

16. The Debtors have therefore filed an emergency motion to compel the receiver to comply with Bankruptcy Code § 543(b).

*Conclusion*

17. The preceding statements are true and correct to the best of our knowledge and belief.

/s/ Gary Dragul
Gary Dragul, President, Clearwater Collection 15, LLC and Clearwater Plainfield 15, LLC, by GDA Clearwater Management, LLC and GDA Real Estate Management, Inc., Manager